**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

FLORA DEATHERIDGE, )
)
Plaintiff, )
v. ) Case No. 17-CV-699-R
)
DOLGENCORP, LLC d/b/a DOLLAR )
GENERAL, )
)
Defendant. )

**PLAINTIFF'S MOTION AND BRIEF IN SUPPORT TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT, RUSSELL KENDZIOR**

Plaintiff moves this Court for an order preventing defendant from introducing the testimony or report of Russell Kendzior since his testimony is not based on any specific referenced data and is unreliable and, thus, will not assist the jury. The report fails to meet the *Daubert* standards and the criteria required under Rule 702 for the admittance of expert testimony. In support of the instant motion, plaintiff would direct the Court to the following:

**BRIEF IN SUPPORT**

**TABLE OF AUTHORITIES**

**Cases**

*Agee v. Purdue Pharm., Inc.*,
*CIV-03-0787-HE, 2004 WL 5352989 (W.D. Okla. Nov. 22, 2004)* ........ 12
*Am. Modern Select Ins. Co. v. Crum, 07-CV-315-JHP-SAJ,*
*2008 WL 4936708 (N.D. Okla. Nov. 17, 2008)* ........ 14
*Brussow v. Webster*,
258 P.3d 615 (Utah Ct. App. 2011) ........ 9
*Cinema Pub, L.L.C. v. Petilos, 2:16-CV-00318-DN,*
*2017 WL 1066628 (D. Utah Mar. 21, 2017)* ........ 10, 11
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
*509 U.S. 578* ........ 13
*Dodge v. Cotter Corp.*,
*328 F.3d 1212 (10th Cir. 2003)* ........ 13
*General Electric Company v. Joiner*,

*522 U.S. 136 (1997)* .......... 13, 14
*Gentieu v. Tony Stone Images,*
214 F.Supp. 2d 849, at page .......... 9
*Goebel v. Denver and Rio Grande Western R. Co.,*
346 F.3d 987, at page .......... 12, 13
*Graves v. Mazda Motor Corp.,*
*675 F. Supp. 2d 1082 (W.D. Okla. 2009)* .......... 14
Gust v. Jones,
*162 F.3d 587 (10th Cir. 1998)* .......... 8
*Kumho Tire Co., Ltd. v. Carmichael,*
*526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)* .......... 11
*Mitchell v. Gencorp, Inc.,*
*165 F.3d 778 (10th Cir. 1999)* .......... 13
*Ralston v. Smith & Nephew Richards, Inc.,*
275 F.3d 965 .......... 10, 14
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308, n. 8, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) .......... 14
*THOMAS v. MITSUBISHI MOTORS CORPORATION, Mitsubishi Motors North America, Inc. and Mitsubishi Motor Sales of America, Inc.,*
*2014 WL 9868440 (D.Utah)* .......... 9
*Truck Ins. Exch. v. Magnetek, Inc.,*
360 F.3d 1206 (10th Cir.2004) .......... 13, 14
*U.S. v. Nachio,*
555 F.3d 1234 (10th Cir. 2009) .......... 14
*Weisgram v. Marley Co.,*
528 U.S.440 .......... 14
*Wood v. Mercedes-Benz of Oklahoma City,*
*2014 OK 68, 336 P.3d 457* .......... 2

**Rules**

Fed. R. Civ. P. 37(c) .......... 9
Fed. R. Evid. 702 .......... 10, 12, 14
Fed.R.Civ.P. 26(a)(2)(B) .......... 8, 9
Rule 26 .......... 8, 9
Rule 26(a)(2)(C) .......... 8

## INTRODUCTION

This is a negligence case. Like the defendant in ***Wood v. Mercedes-Benz of Oklahoma City, 2014 OK 68, ¶ 7, 336 P.3d 457***, the defendant created a hazard when it decided to use a wooden pallet to display product in the busy and cluttered entrance way to its store. Customers had to travel by the pallet that was not equipped with pallet guards, in order to gain access to a

shopping basket. The defendant's definition of a trip hazard is "something that could cause a trip" and the defendant's goal is to eliminate trip hazards. **Exhibit "1", Bishop depo at 58-59.** The defendant further admits that the design of a wooden pallet poses a trip hazard. **Exhibit "1", Bishop depo at 61-62.** These two important facts, among many others, are not addressed by the expert in his report.

The surveillance video shows the plaintiff entering the store, navigating around a cluster of display items, including the almost empty pallet in an attempt to get a shopping cart when her foot became entangled in the pallet causing her to fall. Defendant's expert - a *floor traction* expert, not an expert in the display of merchandise in walkways - states that she "stubbed" her toe on the pallet. She sustained injuries to both shoulders, requiring treatment and surgery. Her incurred medical expenses are in excess of $62,000.00.

## RELEVANT FACTS NOT ADDRESSED IN REPORT

1. Benjamin Scot Bishop is the defendant's District Manager and defendant's designated corporate representative.[1] **Exhibit "1", Bishop depo at 6-7; 18-19.**

2. When Mr. Bishop worked at Big Lots, pallet guards were not used "exclusively," but were used on the pallets displaying product but this defendant does not use them. **Exhibit "1", Bishop depo at 29.**

3. Although Mr. Bishop claims he was not aware of the purpose of pallet guards, (make the pallet safer – prevent tripping), he could not testify that the defendant was not aware of that premise. **Exhibit "1", Bishop depo at 42-46; 51-52: Exhibit "3", exhibits 3, 4 & 5 attached to Bishop depo.**

---

[1] Defendant did not produce all of the documents it had in its possession that were relevant and responsive to plaintiff's request for production of documents. **Exhibit "1", Bishop depo at 19-24; 26-27; 33-34.**

Q You're speaking on behalf of Dollar General today. So is Dollar General unaware of this issue?
A They might be aware of it.

4. A store fixture is a piece of equipment specifically designed and used to display store merchandise. **Exhibit "1", Bishop depo at 33**. The purpose of a pallet is to store and transfer product by the use of forklifts and pallet jacks, not to be used as a display fixture. **Exhibit "1", Bishop depo at 63-64; Exhibit "2", Bustos depo at 24.**

5. Defendant's planograms do not address or call for displaying merchandise on pallets, and the bottled water that was allegedly on the pallet at issue is a core product that should be addressed in planograms. **Exhibit "1", Bishop depo at 34-36.**

6. Safety considerations for displaying any type of merchandise should be considered by the defendant, which would include the use of pallet guards. **Exhibit "1", Bishop depo at 51-52**. Defendant's alleged goal is to eliminate trip hazards. **Exhibit "1", Bishop depo at 58-59.**

7. Defendant uses display gondolas for its core products that have a concave design at the bottom that is a very functional design versus a wooden pallet that has open ends that could cause a customer's foot to become entrapped in which is a foreseeable event. **Exhibit "1", Bishop depo at 61-63; 70; 75-77; 79. Exhibit "3", exhibit 7 to Bishop depo, drawing of bottom of display rack.**

8. The bottled water should not have been displayed as it was on the pallet at the time of the incident; a customer should not have to walk around display obstacles when shopping. **Exhibit "1", Bishop depo at 82.**

9. The photos taken at the time of the accident compared to photos taken after the

accident show that the numerous displays, including the pallet, customers had to walk around at the entrance of the store to access a shopping cart have been eliminated (the clutter is eliminated allowing direct access to the shopping carts). **Exhibit "1", Bishop depo at 85-86; Exhibit "4", photo of entryway at time of accident (referred to in Bishop depo as Exhibit 9 to Deathridge depo); Exhibit "5", photo after accident, (referred to in Bishop depo as exhibit "7" in the Deathridge Depo).**



All display items, hand baskets and pallet partially containing product appearing in right photo (Ex "4") have been removed allowing direct and clear access to carts as depicted in left photo (Ex "5" - not addressed by expert in report).

10. Roschell Gipson, a two year employee of the defendant in the Altus store (where accident occurred) testified that it was "very rare" that the defendant would display product on a pallet. **Exhibit "6", Gipson dep at Pg 8; 10-11.**

11. The only reason the pallet was being used was to stack bottled water because there was an advertised sale for the water; normally it is displayed on the stores regular display gondolas (that have a concave shape at the bottom – **Exhibit "3", exhibit "7" to Bishop depo**); she only observed the defendant during her two years of employment use a pallet one time for displaying product, which is when the plaintiff was injured. **Exhibit "7", Gipson dep at 12-14.**

**12.** Displays (stackouts) should not be placed in a manner so the customer has to

maneuver around them to get to the shopping carts. **Exhibit "8", Bustos depo at 18-19.** This premise is opposite to how displays were positioned in as depicted in **Exhibit "4", photo of entrance way at time of incident.**

**13.** Defendant's store manager, Maria Bustos, recognizes that the design of their display gondolas are designed with a concave bottom to prevent people from catching their foot and tripping on the edge of a square shelf, and a pallet is not designed as such. **Exhibit "9", Bustos depo at 43-44.**




Q Have you ever looked at the bottom of that shelving to determine how it's designed?
A There's, like, a base and a --
Q And is the base concave?
A Yes.
Q All right. Do you know why that's that way?
A Probably so people wouldn't trip over it.

**THE EXPERT REPORT**

The opinions contained in the expert report are unsupported, other than by general references to unspecified sources. It is difficult, if not impossible, to determine whether the

expert has reliably applied recognized principles and methods to the facts of the case, since the expert has not defined the methodology he utilized in arriving at his opinions or the recognized principles/sources he relied on in that regard. As stated in his report, the expert relies on unspecified and undefined "industry standards," "all state, local and national *building codes* and safety standards" to support his opinion that displaying product on pallets in the entrance way to a retail store was consistent with "industry standards" and does not represent a trip hazard.[2] **Exhibit "10", Kendzoir report.** What are the specific industry or customary standards that Mr. Kendzoir references and relies on that form the basis of his opinions? How do national building codes relate to displaying products in a retail store?

It is generally recognized that the main purpose of building codes is to protect public health, safety, and general welfare as they relate to the *construction and occupancy* of *buildings and structures*, and the building code becomes law of a particular jurisdiction when formally enacted by the appropriate governmental or private authority. Is plaintiff now required to conduct an unlimited and exhaustive search to determine what portions of the National Building Code Oklahoma has adopted and then attempt to guess as to what sections of the Code the expert is relying on? Plaintiff submits, and as further discussed below, the answer is no. Plaintiff should be able to rely on the report to understand and identify the complete basis for the expert's opinions, which is not possible in this case.

His opinions do not address, and completely ignore, why pallet guards are used within the retail industry to prevent or reduce the recognized hazard of a customer "stubbing" their toe in/on the pallet (a recognized trip hazard by this defendant), and the fact that this defendant does not use them (despite its policy and procedures indicating they are to eliminate all trip hazards).

---

[2] None of the sources are identified as materials he reviewed for the basis of his opinions on page one of his report. He lists twelve items he reviewed in preparation of his report, no specific source is identified.

His opinions do not consider the inconvenient facts/testimony of the defendant's corporate representative, the defendant's store manager, the fact that defendant recognizes that the very design of a wooden pallet poses a trip hazard to its customers, and that a pallet by its very design and definition is not intended to function as a floor display fixture. **Exhibit "11", Pallet Safety, HSE Guidance Note PM15**. None of these facts are addressed by the expert.

The jury, without "expert" assistance, can determine if plaintiff was not paying attention, another unsupported opinion of the expert, and that was the sole cause of the accident. The report simply espouses the expert's own opinions, there is no recognized methodology employed by the expert in arriving at his opinions.

**PURPOSE OF RULE 26 REPORT**

As explicitly stated in the rule, the report shall contain a complete statement of all opinions to be expressed and the *basis* and *reasons* therefore, the *data* or other *information* considered by the expert in forming the opinions, and other information about his background and qualifications. ***Gust v. Jones, 162 F.3d 587, 592 (10th Cir. 1998) Fed.R.Civ.P. 26(a)(2)(B).*** The purpose of the rule is so the Court and the parties can rely on the report as a complete statement of all opinions to be expressed by the expert and the basis and reasons therefore as well as the data or other information considered. It's also significant, that under Rule 26(a)(2)(C), the disclosures with respect to experts "shall be made at the times and in the sequence directed by the Court." The court entered a scheduling order in this case on September 5, 2017 establishing the date for defendant to submit expert reports (Doc. #11).

As to the intended purpose of a Rule 26 report, trial judges and the litigants can draw valuable guidance not only from the opinions from the 10th Circuit, but also from

the Advisory Committee notes accompanying the 1993 amendments. In this connection, it's noteworthy that the Advisory Committee notes make it clear that the report must be "a detailed and complete written report stating the testimony the witness is expected to present during direct examination together with the reasons therefore."[3] In other words, the Advisory Committee notes make it clear that an expert's report should be a reasonably complete statement of the expert's anticipated testimony and should set forth the basis for the testimony. The Advisory Committee further noted, by way of illustration of that premise, that the report requirement may result in reduction in the length of depositions of experts "and in many cases the report may eliminate the need for a deposition."

This was elaborated on by Judge Shadur in the Northern District of Illinois in ***Gentieu v. Tony Stone Images, 214 F.Supp. 2d 849, at page 851:*** "[O]ne valuable by product of the 1993 version of Rule 26(a)(2)(B) has been the ability of opposing parties and courts to rely on a claimed expert's report under that Rule as definitive (see the 1993 Committee Note on that subject). That report pins the expert down so that any attempted departure from its terms in the course of his or her trial testimony may be excluded—or if already proffered, may be stricken. And from the judicial standpoint, the Rule 26(a)(2)(B) report may be taken as gospel in the District Court's exercise of its *Daubert–Kumho* gatekeeping responsibilities."

---

[3]The Advisory Committee Notes likewise explain that the report is intended to set forth the substance of the direct examination: An expert witness "must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefore." Rule 26, Advisory Committee Notes, 1993 Amendment. Moreover, Rule 37(c)(1) provides a strong incentive for full disclosure: namely, exclusion of information that should have been revealed but was not. *See* Fed. R. Civ. P. 37(c); *Brussow v. Webster*, 258 P.3d 615, 618 (Utah Ct. App. 2011) (stating the "[f]ormal disclosure of experts is not pointless," and affirming trial court's striking untimely disclosed witnesses). Thus, the Affidavits are untimely and should be stricken." ***Thomas J. THOMAS, Plaintiff, v. MITSUBISHI MOTORS CORPORATION, Mitsubishi Motors North America, Inc. and Mitsubishi Motor Sales of America, Inc., Defendants., 2014 WL 9868440 (D.Utah).***

**EXPERT OPINIONS IN REPORT FAIL TO SATISFY REQUIREMENTS OF RULE 702**

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Fed. R. Evid. 702.* "District courts are tasked with the responsibility of serving as the gatekeepers of expert evidence, and must therefore decide which experts may testify and present evidence before the jury. Courts are given "broad latitude" in deciding "how to determine reliability" and in making the "ultimate reliability determination." ***Cinema Pub, L.L.C. v. Petilos, 2:16-CV-00318-DN, 2017 WL 1066628, at *3 (D. Utah Mar. 21, 2017).*** As will be demonstrated below, the opinions expressed by defendant's expert are unreliable, ignore crucial inconvenient facts, and amount to nothing more than his unsupported opinions that will not aid the jury in understanding the evidence or facts at issue in this case.

First, it's clear that when the proposed testimony of an expert is challenged, Rule 104(a) casts upon the proponent of the testimony the burden of establishing the admissibility of the testimony by a preponderance of the evidence. That's clear from *Daubert at page 592, note 10*, and was certainly echoed by the 10th Circuit in the *Ralston case, 275 F.3d 965, at page 970 in note* [4]. That premise is also set forth by the Advisory Committee notes to the 2000 amendment to Rule 702 where the Advisory Committee said, "The admissibility of all expert testimony is governed by

the principles of Rule 104(a). Under that rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."

Ultimately it all boils down, in substance, to a question of whether the proffered expert testimony as set forth in the report is "not only relevant, but reliable" and whether the testimony ultimately assists the jury in understanding the facts in this case. ***Daubert at page 589.*** Subsequent to the *Daubert* decision, the Supreme Court decided ***Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).***[4] In ***Kumho***, the Supreme Court told us that the trial court's gatekeeping functions as applied to proposed expert testimony outside of the realm of classical scientific testimony are still quite important. The Court emphasized that where the proposed expert testimony is not scientific in the classical sense, the district court is nevertheless required to ascertain whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." ***Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999).*** If the proposed expert is determined to be sufficiently qualified, the Court must then determine whether his opinions are reliable in the sense required by ***Daubert*** and ***Kumho***. That includes an analysis both of the expert's qualifications and of the reliability and fit of his proposed expert testimony.

In this case, defendant's expert *appears* to be qualified to testify regarding

---

[4] "In determining whether expert testimony is admissible the first step is to determine whether the expert is qualified, and then if the expert is qualified determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology. If the expert is qualified and the opinion reliable, the subject of the opinion must be relevant; i.e. the opinion must 'help the trier of fact to understand the evidence or to determine a fact *in issue*.' 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.' ***Cinema Pub, L.L.C. v. Petilos, 2:16-CV-00318-DN, 2017 WL 1066628, at *4 (D. Utah Mar. 21, 2017).***

floor surfaces, *i.e.*, whether a floor material presents a slip hazard due to its construction or makeup.[5] It is not clear however, based on his report, that this expert is qualified to testify regarding what type of retail display equipment/structures are, and are not, appropriate for displaying product, *i.e.*, that do not pose an inherent trip hazard for the customer. Defendant has not satisfied its burden in establishing, by the expert's report, that he has such qualifications.

Assuming that the expert is qualified to testify regarding the type of equipment that constitutes a safe display of products in a retail store such as the defendant's, then under Rule 702, an expert who does have the necessary qualifications in the relevant field, may give expert testimony if three prerequisites are met. First, the proposed testimony must be based on sufficient facts or data. Secondly, the testimony must be the product of reliable principles and methods. Thirdly, the witness must have applied those principles and methods reliably to the facts of the case. That much is very clear from Rule 702 and was echoed in the numerous cases from the 10th Circuit, including the ***Goebel decision, 346 F.3d 987, at page 991***.

The amendments to Rule 702 and the Advisory Committee notes to those amendments, provide additional factors to take into account, including consideration of "whether the expert has adequately accounted for obvious alternative explanations" and "whether the expert is being as careful as he would be in his regular professional work outside of his paid litigation consulting." ***Agee v. Purdue Pharm., Inc., CIV-03-0787-HE, 2004 WL 5352989, at *2 (W.D. Okla. Nov. 22, 2004), aff'd sub nom. Agee v. Purdue Pharm., L.P., 242 Fed. Appx. 512 (10th Cir. 2007).***

In making its reliability determination, the Court may assess several non-exclusive

[5] It should be noted that despite his expertise in testing slip-resistance surfaces and coefficient friction measurements, his expert conclusions did not withstand a ***Daubert*** challenge in ***Alsip v. Wal-Mart Stores East, LP*** (opinion attached as **Exhibit "12"**).

factors including: (1) whether the opinion can be or has been tested for reliability; (2) whether the opinion has been subjected to publication or peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. ***Truck Ins. Exch. v. Magnetek, Inc.,* 360 F.3d 1206, 1210 (10th Cir.2004).** Courts have also considered whether the proffered opinion has been developed expressly for purposes of testifying, whether the expert has been as careful in forming his opinion for his paid litigation work as he is in his regular profession, whether the expert has adequately accounted for obvious alternative explanations, and whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. The report in question expresses opinions expressly for purposes of testifying in this litigation, without reliance on any expressed recognized methodology or principles.

Generally, a District Court should focus on an expert's methodology rather than the conclusions such methodology generates. ***Mitchell v. Gencorp, Inc., 165 F.3d 778, 781 (10th Cir. 1999), citing Daubert, 509 U.S. at 595.*** "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" ***Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003), quoting General Electric Company v. Joiner, 522 U.S. 136, 146 (1997).*** "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." ***Joiner 522 U.S. at 146.*** "'Under *Daubert,* any step that renders the analysis unreliable...renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.' *Goebel II,* 346 F.3d at 992 (citations and internal

quotations omitted); *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir.1999). If the challenged expert testimony is crucial to the proponent's case, the result of a successful *Daubert* challenge may be entry of judgment as a matter of law. *Joiner,* 522 U.S. at 142–43, 118 S.Ct. 512; *cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 at 327, n. 8, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Weisgram,* 528 U.S. at 453, 120 S.Ct. 1011. *See, e.g., Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1213 (10th Cir.2004); *Ralston,* 275 F.3d at 974." ***Graves v. Mazda Motor Corp., 675 F. Supp. 2d 1082, 1095 (W.D. Okla. 2009), aff'd, Graves v. Mazda Motor Corp., 405 Fed. Appx. 296 (10th Cir. 2010); also see Am. Modern Select Ins. Co. v. Crum, 07-CV-315-JHP-SAJ, 2008 WL 4936708, at *2 (N.D. Okla. Nov. 17, 2008).***

Since the burden of demonstrating the admissibility of expert testimony, as against the standards of *Daubert* and Rule 702, is on the proponent of the testimony, ***U.S. v. Nachio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc), Ralston, 275 F.3d at 970,** it was the defendant's obligation to ensure that the expert report it provided to plaintiff and the court contained opinions that complied with Rule 702, in the very least that the expert specifically identify the data/studies that his testimony is based on and the methodology used in arriving at such opinions.

In this case, we do not have an expert's Rule 26 report that shows reasoned considerations of specific stated industry standards that support his opinions. Nor does the report show consideration of the facts/testimony of defendants cooperate representative and its employees regarding how a pallet poses a trip hazard as opposed to a bottom-concaved floor gondola that defendant uses. In addition, his report is devoid of addressing how pallet guards are used in the industry to prevent customer tripping.

It is quite difficult, based on the substance of his report, to reach a conclusion

other than that the expert's opinions are simply the *ipse dixit* of the expert. There is no inclusion of material facts analyzed by the expert regarding the display of merchandise on an unprotected pallet in a busy walkway of the store. The expert does not analyze the highly relevant facts to his incident, even if they're inconvenient and, perhaps, especially if they are inconvenient facts. The testimony must be the product of reliable principles and methods and the witness must be shown to have applied the principles and methods reliably to the facts of the case. There is no such indication based on his single page-and-half report. The third requirement, that the witness apply the principles and methods reliably to the facts of the case, is fairly starkly implicated where again the witness in his report of his testimony does not show any reasoned consideration of how certain inconvenient facts have a bearing on his proposed testimony.

By way of illustration only, Mr. Kendzior's testimony, as reported in his report, does not analyze the matter in terms of Oklahoma law, does not analyze the matter in terms of the *specific* industry standards and the purpose of pallets versus the purpose of concave display gondolas used by the defendant, and importantly does not address defendant's recognition that the design of a pallet for display purposes poses a trip hazard. He does not address in any reasoned way the specific facts and testimony in this case in context to stated principles in his field of expertise, nor do his opinions show any reasoned consideration of specific relevant recognized sources.

## CONCLUSION

Mr. Kendzoir is a floor traction expert, which is not an expert field that is relevant to the facts of this case. From what plaintiff's counsel can discern from several of the expert's previous

disclosures, his testimony focuses on floor surfacing (whether is unreasonably slippery). His report in this case expresses opinions tailored for this specific litigation and are simply the *ipse dixit* of the expert. The report does not satisfy the requirements of Rule 26.

Respectfully Submitted,

s/Rick W. Bisher

Rick W. Bisher, OBA # 12215
RYAN, BISHER, RYAN & SIMONS
4323 NW 63rd St. Ste 110
Oklahoma City, Oklahoma 73116
Telephone: (405) 528-4567
Facsimile: (405) 525-2123
rbisher@rbrlawfirm.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic filing to the following ECF Registrant:

Gary W. Farabough (gfarabough@sbcglobal.net)